84 F.3d 47
 UNITED STATES of America, Appellee,
v.
Mohammed A. SALAMEH, Nidal Ayyad, Mahmoud Abouhalima, also
known as Mahmoud Abu Halima, and Ahmad Mohammad
Ajaj, also known as Khurram Kham,
Defendants-Appellants.
 Nos. 94-1312L, 94-1313CON to 94-1315CON.
 United States Court of Appeals,
Second Circuit.
 Argued April 29, 1996.
Decided May 9, 1996.
 
 Lawrence M. Stern, New York City, for defendant-appellant Abouhalima.
 Jeremy Schneider, Rothman, Schneider, Soloway & Stern, New York City, for defendant-appellant Ayyad.
 Frank Handelman, New York City, for defendant-appellant Salameh.
 Maranda Fritz, Fritz & Miller, New York City, for defendant-appellant Ajaj.
 J. Gilmore Childers, Asst. U.S. Atty., New York City, for appellee.
 Before: NEWMAN, Chief Judge, McLAUGHLIN and CABRANES, Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 Pending before the Court is a motion to reinstate appeals by four defendants convicted of various offenses in connection with the April 26, 1993, bombing of the World Trade Center. Following conviction by a jury, the four defendants were sentenced on May 24, 1994. All four defendants filed notices of appeal, and this Court established a briefing schedule.
 
 
 2
 On June 23, 1995, defendants Abouhalima and Ajaj filed in this Court separate motions to remand their cases to the District Court for consideration of motions they wished to present to the District Court seeking to vacate the judgments of conviction on various grounds. The motions were heard on July 18, 1995, with counsel for the movants and counsel for defendants Salameh and Ayyad in attendance. Though the four defendants initially took differing positions with respect to the appropriateness of an immediate remand, by the end of the hearing, all four defendants requested this Court to remand their cases to the District Court. Accordingly, on July 18, 1995, this Court issued an order (the "Remand Order") "remanding this appeal to the district court for further proceedings. Appeal to be reinstated pursuant to USA v. Jacobson, 15 F.3d 19 (2d Cir[.] 1994) by letter to the Clerk of this Court within 10 days of entry of order following disposition of motion on remand."
 
 
 3
 Several events occurred thereafter in the District Court, but for purposes of the pending motion, we need recount only the following. Counsel for Ajaj informed Judge Duffy that the motion papers she had previously presented to the Court were preliminary and that she required additional time to present a final motion. At a conference with counsel on July 26, 1995, Judge Duffy informed counsel that all motions based on newly discovered evidence were denied because the proffered evidence was not new. Turning next to the requests of defendants Abouhalima, Ayyad, and Ajaj for a hearing on their claims of ineffective assistance of trial counsel, Judge Duffy scheduled a hearing for August 7, 1995. The District Judge also stated that trial counsel would be called to testify and that the claim of ineffective assistance of trial counsel resulted in a waiver of the attorney-client privilege as to conversations between trial counsel and their clients.
 
 
 4
 Abouhalima and Ajaj then filed petitions in this Court for writs of mandamus, seeking various forms of relief. On August 9, 1995, this Court issued the following order (the "Denial of Mandamus Order"):
 
 
 5
 The mandamus petitions issued in the captioned cases hereby are denied, with leave to renew in the event that the district court fails to:
 
 
 6
 1. receive the government's written responses to the motions that were the subject of our remand order of July 18, 1995, and
 
 
 7
 2. conduct such evidentiary hearings as it may deem necessary to determine the issues presented no earlier than 30 days following the date the responses are received, and
 
 
 8
 3. rule specifically on each issue raised by the said motions.
 
 
 9
 On October 16, 1995, Ajaj filed in the District Court a final version of his motion challenging his conviction. On November 16, 1995, the Government filed its responses to the motions then pending in the District Court.
 
 
 10
 On November 17, 1995, Judge Duffy held a conference with counsel. He initially stated that he had received the case back from the Court of Appeals "without any instructions as to why it was being remanded." Then, referring to this Court's Denial of Mandamus Order, he stated, "The order claims not to be a mandamus, but in fact is a mandamus. The order specifically says: Denied, except if the District Court fails to do this and that. Okay."
 
 
 11
 Judge Duffy then discussed what he determined to be the two principal claims underlying the defendants' motions for a new trial--newly discovered evidence and incompetency of trial counsel. He reiterated his previously expressed view that the claims based on newly discovered evidence had presented nothing new, although he also stated that he would not "start" with that issue, thereby implying that he had not yet finally ruled on that aspect of the claims. Turning to the ineffective assistance of counsel claim, Judge Duffy expressed concern that the presentation of this claim would inevitably disclose proffers of evidence that would risk prejudicing the jury pool from which juries would be selected for forthcoming trials of other defendants charged in connection with the World Trade Center bombing. Because of this concern, he offered the defendants the choice of either proceeding with their counsel claims at a hearing on December 4, 1995, or else waiting for a considerable period of time, which he described as "at least a year."
 
 
 12
 On April 16, 1996, all four defendants jointly filed the pending motion to reinstate their appeals from the judgments of conviction. Alternatively, they seek reassignment of their District Court motions to a different judge.
 
 Discussion
 
 13
 Initially, we deem it appropriate to comment on certain aspects of our initial remand ruling and our subsequent ruling on the mandamus petitions. The Remand Order specified only that the case was remanded "for further proceedings." Though that open-ended direction evidently afforded the District Court less guidance than it deemed appropriate, it permitted the Court to entertain whatever collateral attacks upon the judgments of conviction that the defendants wished to present. Rather than prescribe a precise course for the District Court to follow, the Remand Order permitted the District Court itself to determine the appropriate course of "further proceedings."
 
 
 14
 The order denying the mandamus petitions was perceived by the District Court as an order that is "in fact" a mandamus since it specified three circumstances under which the defendants would have leave to renew their petitions. The Denial of Mandamus Order, however, was not a mandamus order. The petitions seeking mandamus were denied, not granted. This Court, like all courts, is capable of crafting orders that convey obligatory directions to those parties properly subject to the Court's jurisdiction, including, where appropriate, judicial officers subject to this Court's mandamus jurisdiction.
 
 
 15
 Though the Denial of Mandamus Order did not issue a writ of mandamus, it employed language frequently used by courts to state the conditions under which the party seeking a writ of mandamus has leave to reapply for the writ. Such language is typically used when mandamus is sought to secure judicial action that has long been delayed. Rather than choose between the extremes of ordering immediate action, which might unduly disrupt the conduct of business in a district court, and denying the writ without comment, which might be misperceived as tolerating the delay that has occurred, an appellate court will sometimes deny the petition "without prejudice to renewal" in the event that the matter under advisement in the district court is not decided within a stated period of time, often 60 or 90 days. See, e.g., NLRB v. Long Island College Hospital, 20 F.3d 76, 80 (2d Cir.1994). That language does not order action in the district court, but it does convey the appellate court's preference that action should be taken. Usually the preferred action is taken. If not, the petitioner may return to the appellate court, at which time the appropriateness of then issuing a writ of mandamus receives plenary consideration.
 
 
 16
 In the pending matter, in which jurisdiction was originally transferred to this Court by the filing of notices of appeal, the parties that sought and were denied a writ of mandamus have elected not to renew their applications, but instead, joined by their co-defendants, have decided to seek the remedy of reinstating their appeals. That choice of remedy encounters the Government's threshold objection that we lack jurisdiction to grant the requested relief. The jurisdictional issue requires consideration of this Court's decision in United States v. Jacobson, 15 F.3d 19 (2d Cir.1994).
 
 
 17
 Jacobson slightly altered this Court's prior practice applicable to a pending appeal in which it became appropriate for some further action to be taken in the district court. Previously, we would enter an order requesting certain action to be taken in the trial court (in Jacobson, supplementing the record), then state that we "retained jurisdiction," and not issue a mandate. That formulation created uncertainty as to the district court's jurisdiction to act while jurisdiction was "retained" in the appellate court.[1] Jacobson announced a new procedure whereby this Court, after directing the action to be taken in the district court, would issue the mandate, and the mandate would "state the conditions that will restore jurisdiction to this court." Jacobson, 15 F.3d at 22. That procedure eliminates any question as to the district court's jurisdiction and enables this Court to provide, if appropriate, for the automatic restoration of appellate jurisdiction, without the need for a new notice of appeal. This Court's Remand Order followed the Jacobson procedure.
 
 
 18
 The Government's view that we lack jurisdiction to consider the pending motion to reinstate appellate jurisdiction is mistaken. It rests on the incorrect premise that the conditions specified in a mandate for the restoration of jurisdiction are exclusive. Thus, in this case, the Government contends that jurisdiction cannot be restored until Judge Duffy decides the pending motions. However, a court of appeals always has authority to restore appellate jurisdiction over a case that has been remanded to a district court. Such authority has regularly been exercised by this and other courts in granting a motion to recall a mandate in a case remanded to a district court. See, e.g., Zipfel v. Halliburton Co., 861 F.2d 565, 567 (9th Cir.1988); Dunton v. County of Suffolk, 748 F.2d 69, 69 (2d Cir.1984); see also Sargent v. Columbia Forest Products, Inc., 75 F.3d 86, 89 (2d Cir.1996); Sparks v. Duval County Ranch Co., 604 F.2d 976, 979 (5th Cir.1979) (in banc), aff'd on other grounds sub nom. Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).
 
 
 19
 The Jacobson procedure does not bar this Court from exercising its authority to resume appellate jurisdiction. Where circumstances change, we may determine that the course of action originally contemplated by our mandate is no longer appropriate. Though the Government is correct in asserting that jurisdiction follows the mandate, see United States v. Rivera, 844 F.2d 916, 921 (2d Cir.1988), and that "[t]he effect of the mandate is ... to remove [a case] from the jurisdiction of this Court," Ostrer v. United States, 584 F.2d 594, 598 (2d Cir.1978), we nevertheless may determine that it is appropriate to restore jurisdiction by recalling the mandate. The specification of conditions to restore jurisdiction under the Jacobson procedure cannot be exclusive. Otherwise, we would have divested ourselves permanently of authority to exercise our appellate jurisdiction.
 
 
 20
 On the merits of the pending motion, we conclude that the circumstances now existing in the District Court make it appropriate to restore appellate jurisdiction at this time. The delays that have ensued and will ensue in connection with defendants' collateral challenges to their convictions were not foreseen at the time of the Remand Order. The initial delay resulted from problems, whether or not avoidable, in finally submitting defendants' motions. The prospect of an extended future delay results from the risks perceived by Judge Duffy that would arise from a hearing of the defendants' motions in this case contemporaneously with proceedings in related cases. We need not make any assessment of whether the delays that have occurred or those that are contemplated are warranted. All we decide on this motion is that the circumstances now confronting the defendants justify their decision to prefer to resume their appeals from the judgments of conviction, rather than await a hearing and disposition of their collateral attacks.
 
 
 21
 The Government apprehends that granting the pending motion will permit litigants to pretermit trial court consideration of remanded matters whenever they become "disenchanted" with the course of district court proceedings. Affirmation in Opposition to Motion for Reinstatement at 13. That fear is groundless. The opportunity to seek reinstatement of a remanded appeal does not assure success. This Court retains full authority to distinguish between meritorious applications and tactical maneuvers.
 
 
 22
 Of somewhat greater force is the Government's concern that reinstatement of the appeals will bring before this Court new matters injected into the record in connection with the pending collateral attacks, matters that might require fact-finding and that have not been adjudicated by the District Court. We believe that concern can be adequately dealt with by the merits panel to which these appeals will be assigned. In granting the motion to reinstate the appeals, we restore to our jurisdiction only the appeals for which notices of appeal were previously filed, i.e., the appeals from the four judgments of conviction. It will be up to the panel hearing those appeals to determine, upon proper application, whether appellate jurisdiction should be exercised to any additional extent and to what extent, if any, matters inserted into the record after the judgments of conviction should be considered.
 
 
 23
 Accordingly, we recall the mandates in this case, and grant the motion to reinstate the appeals of the four defendants. By restoring our appellate jurisdiction over these appealed judgments, we thereby divest the District Court of jurisdiction to grant any relief that alters those judgments.[2] See Fed.R.Crim.P. 33 ("[I]f an appeal is pending, the court may grant the motion [for a new trial] only on remand of the case."). Since the briefs of defendants Abouhalima, Ayyad, and Salameh were filed some time ago, we grant those defendants 60 days to file supplemental briefs. Ajaj shall file his brief within 60 days, the Government shall have four months from the expiration of the 60-day period to file its brief, the defendants shall have 30 days to file reply briefs, and the appeals will be available for argument as early as the week of December 15, 1996. In granting the motion to reinstate the appeals, we do not adopt appellants' characterizations of the proceedings in the District Court. The alternative request for reassignment of the pending motions in the District Court to a different judge (which is not entirely an alternative request since the new trial motions remain pending) is denied.
 
 
 
 [1]
 Presumably, what was occurring was a partial restoration of jurisdiction in the district court for a limited purpose
 
 
 [2]
 By restoring appellate jurisdiction over the judgments, we do not impair the authority of the District Court to deny any motions seeking to alter the judgments, see United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and we express no opinion on the authority of the District Court to act upon any request for relief that might be made to facilitate the ultimate consideration of the pending motions to collaterally attack the judgments