06-0226-cr
U.S. v. Cole

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: March 20, 2007

Decided: August 9, 2007)

Docket No. 06-0226-cr

UNITED STATES OF AMERICA,

*Appellee*,

-*v.*-

PATRICK M. COLE

*Defendant-Appellant*.

BEFORE:

HON. ROBERT D. SACK,
HON. BARRINGTON D. PARKER,
HON. PETER W. HALL,

*Circuit Judges*.

Appeal from an order of the United States District Court for the Western District of New York (Arcara, *J.*), sentencing defendant to 90 months' imprisonment. Principally because the district court failed to provide sufficient notice of its intent to consider *sua sponte* an above-Guidelines sentence, we vacate and remand.

Timothy W. Hoover, Federal Public Defender's Office, Buffalo, New York *for defendant-appellant*.

Stephan J. Baczynski, Assistant United States Attorney, Buffalo, New York *for appellee*.

_____

HALL, *Circuit Judge*:

Defendant-Appellant Patrick M. Cole appeals from an order sentencing him to 90 months' imprisonment. Principally because the district court failed to provide sufficient notice of its intent to consider *sua sponte* an above-Guidelines sentence, we vacate and remand.

## I. Background

### A.    The Offense and Plea Agreement

In May 2004, a grand jury in the Western District of New York indicted Defendant-Appellant Patrick M. Cole on 15 counts of mail fraud, 18 U.S.C. § 1341. After the filing of the indictment, authorities arrested Cole in Nevada, releasing him on conditions that included he voluntarily appear to answer charges in the Western District of New York. Cole appeared before the district court where he initially pled not guilty. After litigating pretrial motions, however, Cole accepted a plea agreement in which he pled guilty to a single count of mail fraud.

According to the plea agreement, Cole "held himself out to be a successful investor, who was willing to invest money of others, falsely claiming that he was investing their money by trading stocks on-line." Plea Agreement of Patrick M. Cole ¶ 6. Cole accentuated this fraud by establishing "Sanssuecie, Inc.," a Nevada corporation. Because it was based in Nevada, Cole told his victims, the corporation benefitted from certain tax advantages that he could pass on to his "investors." In fact, Cole did maintain two Nevada addresses—one at a postal annex and the

other at a gas station—and employed a Nevada-based mail forwarding service to coordinate the two. Cole used these addresses and the mail forwarding service to dispatch victim investors' statements from Las Vegas with a Las Vegas return-address and a Las Vegas postmark, thus supporting the illusion the investments "occurred through his company in Las Vegas." These fraudulent statements "falsely show[ed] large returns" so as to lull "the investors into believing they had ample funds invested." In addition, Cole plied a Ponzi-like technique for part of his scheme, paying returns to earlier "investors" with money provided by later victims, thus lending his con a further air of legitimacy. In truth, Cole had not invested the money entrusted to him by his victims but instead used that money to finance his ongoing scheme as well as personal expenses. All told, Cole defrauded his victims of nearly $1.5 million over the course of at least four years. More than $1 million of that sum has not been recovered.

Cole acquiesced, by way of his plea agreement, to all but one of the Guidelines adjustments the Government sought. Cole agreed to the base offense level (level 7), as well as an enhancement for the amount of loss (16 level increase), an enhancement for number of victims (4 level increase), and a reduction for acceptance of responsibility (3 level reduction). Cole reserved the right to dispute, however, the Government's proposed two-level enhancement for use of sophisticated means under U.S.S.G. § 2B1.1(b)(9). Plea Agreement of Patrick M. Cole ¶ 9 ("The defendant specifically reserves the right at the time of sentencing to argue to the Court that this [sophisticated means enhancement] does not apply."). Cole and the Government agreed Cole was a first-time offender and so merited a Criminal History Category of I. Thus, in advance of his sentencing hearing, Cole sought application of a Guidelines range of 51-63 months, while the Government advocated for a Guidelines range of 63-78 months. The difference in the ranges

3

reflected simply the parties' disagreement as to whether Cole used sophisticated means in executing his scheme.

### B. The Presentence Investigation Report and the Sentencing Hearing

Before he filed the Presentence Investigation Report (the "PSR"), the probation officer reviewed the plea agreement and interviewed Cole in the presence of his counsel. The probation officer then endorsed the Government's hoped-for Guidelines range: Offense Level of 26, and a Criminal History Category of I, yielding a Guidelines range of 63-78 months. The PSR also stated there appeared to be no reason to depart from the Guidelines range.

Cole filed a timely written request for a downward departure, in which, as reserved in the plea agreement, he also objected to the proposed sophisticated means enhancement. The Government responded to this objection on its merits. Ultimately, the Government urged the district court to sentence Cole "within the advisory Sentencing Guidelines range of 63-78 months," but "at the highest end of that range." Although Cole did meet with the probation officer *before* the filing of the PSR, neither he nor his attorney did so after the PSR was filed and before the sentencing hearing.

At the sentencing hearing, which lasted about an hour and a half, the district court explained it would not entertain Cole's argument disputing the sophisticated means enhancement. The court justified this ruling by reference to the "local procedural guidelines of the federal sentencing procedures under the Sentencing Reform Act of 1984."[1] "[P]aragraph 4"[2]

---

[1] We provide the relevant text of this document in an appendix to the opinion.

[2] The court appeared to be referring to paragraph three of the document, not paragraph four, as discussed *infra*.

of that document, the court explained, requires a party "who reasonably disputes sentencing factors" to seek "administrative resolution of the disputed factors through opposing counsel and the . . . Probation Office before filing its statement with respect to the sentencing factors." The court further explained that paragraph five of that document required counsel to confer "with the opposing counsel and the U.S. Probation Office in a good faith effort to resolve the disputed matter." The court concluded that by failing to meet with the probation officer between the filing of the PSR and the sentencing hearing, defense counsel violated these rules.

After denying defense counsel the opportunity to argue the objection to the sophisticated means enhancement, the district court continued with the sentencing proceedings. In summarizing the applicable Guidelines range, the district court initially gave no indication of its intent to consider an upward departure. After hearing several of Cole's victims, the district court noted that Cole could not account for all his ill-gotten gains: "And one of the most amazing things about all the things I've been reading is he didn't know what he did with the money. He can't account for the money." The district court then stated that absent evidence to the contrary, it could infer Cole "[has] got a stash somewhere or an offshore account" in which Cole had secreted the stolen money. The conclusion that Cole had hidden the money, the district court made clear, constituted a basis for an upward departure: "I intend to give him a sentence higher than any guideline range." The district court and defense counsel then engaged in a colloquy concerning the validity of the inference that defendant had a "stash" of stolen money. During this colloquy the district court again stated the inference "means going over the guidelines. And I'm telling you right now I intend to do it." Later, the district court appeared to retreat from its insistence that an upward departure must be imposed: "I'm just putting you on notice that I'm

5

seriously considering going over." Ultimately, at the end of the sentencing proceeding, less than an hour and a half after it had begun, the district court adopted the Government's proposed Guidelines range of 63-78 months, then departed upward 12 months to arrive at a sentence of 90 months' incarceration.

## II. Discussion

### A. Notice of Intent to Consider Above-Guidelines Sentence

In this case, the district court *sua sponte* imposed an above-Guidelines sentence, departing 12 months above the highest end of the Guidelines range that it found applicable. As Cole correctly notes, a district court must provide reasonable prehearing notice of its intent to consider a sentence above the Guidelines range. Fed. R. Crim. P. 32(i)(1)(c); *United States v. Anati*, 457 F.3d 233, 237 (2d Cir. 2006). Of course, the "right to be heard has little . . . worth unless one is informed that a decision is contemplated." *Burns v. United States*, 501 U.S. 129, 136 (1991) (internal quotation marks and citations omitted). The notice given during the course of the sentencing hearing and put into effect less than two hours later was insufficient. Failure to give such reasonable notice constitutes plain error. Consequently, we remand. *United States v. Gilmore*, 471 F.3d 64 (2d Cir. 2007) (per curiam). On remand, the district court must provide the defendant notice so as to avert "unfair surprise" as well as facilitate "adversarial testing of factual and legal considerations relevant" to the contemplated departure. *Anati*, 457 F.3d at 237 (internal quotation marks omitted).

### B. Refusal to Consider Defense Counsel's Objection to the Guidelines Calculation

In the estimation of the district court, Cole's counsel violated a "local procedural

guidelines rule" by failing to meet in conference with a probation officer in the time between the filing of the PSR and the sentencing hearing, to discuss his objections to the PSR. In response to this ostensible procedural violation, the district court denied Cole the opportunity to argue his objection to the sophisticated means enhancement. We hold that Judge Arcara should have afforded Cole this opportunity.

1.     *The "Local Procedural Guidelines Rule"*

As a preliminary matter, the parties dispute the status of the district court's "local procedural guidelines rule." Thus, our first task is to identify this rule and determine its relationship to the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 57(b) (mandating that standing orders be "consistent with" the Federal Rules). The parties draw our attention to a document called "Procedure to Assist Practitioners Before the United States District Court Judges Richard J. Arcara and William M. Skretny In Proceedings Under the Sentencing Reform Act of 1984 in Western District of New York," *available at* http://www.nywd.uscourts.gov /document/SA_SEN.pdf (last accessed August 3, 2007), which we include in an appendix to this opinion. Paragraph three of that document (hereinafter, "paragraph three") states:

> If a party disputes any legal conclusions, sentencing factors or findings of facts material to sentencing included in the PSR, or seeks the inclusion in the PSR of any additional legal conclusions, sentencing factors or facts material to sentencing, it is that party's obligation to seek administrative resolution of such disputes by conferring with opposing counsel and the Probation Office prior to filing the [Statement of Parties with Respect to Sentencing Factors]. This presentence conference is mandatory except when the PSR is undisputed. No party may file a written objection to the PSR . . . unless he or she has conferred with opposing counsel and the Probation Office in a good faith effort to resolve the disputed matter.

Cole and the Government agree paragraph three does not have the force of a local rule; it was not adopted by a majority of judges following a period of appropriate public notice and

7

comment.[3] The Government instead contends paragraph three reflects a "standing order." We conclude that because paragraph three does not constitute a local rule, it must be a standing order. Rule 57(b), which governs standing orders and is captioned "Procedure When There Is No Controlling Law," provides that a "judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Cole argues that Fed. R. Crim. P. 32(f), which governs objections to the PSR, represents "[c]ontrolling [l]aw" in this area and thus must preclude the district court from addressing in a standing order the procedure covered in paragraph three.

The Advisory Committee's comments on Rule 57 explain that Rule 57(b) was intended to allow individual courts to regulate 'matters of detail' by local rules or usage. "'Matters of detail'" include "the mode of impaneling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury, the matter of sealed verdicts, the order of counsel's arguments to the jury, and other similar details." Advisory Committee note 2 on Rule 57(b). Although we have not specifically addressed the standard by which to evaluate the validity of a standing order promulgated pursuant to Rule 57(b), the Third Circuit has read 28 U.S.C. § 2071(a) and Rule 57 together to impose two requirements for a valid standing order affecting criminal matters. "First, . . . the local rules must not be inconsistent with the Federal Rules of Criminal Procedure. Second, as the advisory notes to Rule 57 made clear, the local rules must be narrow in scope and must deal with 'matters of detail' not covered by the Federal

---

[3] For the local rules of criminal procedure for the Western District, *see* United States District Court for the Western District of New York Local Rules of Criminal Procedure, *available at* http://www.nywd.uscourts.gov/document/criminalamendments2003.pdf (last accessed August 3, 2007).

8

Rules." *Baylson v. Disciplinary Bd. of Supreme Court*, 975 F.2d 102, 107 (3d Cir. 1992) (footnote omitted). "Local rules that fail to comply with those requirements are nullities." *Id.* (citing *Frazier v. Heebe*, 482 U.S. 641, 646 (1987)). By comparison, the Tenth Circuit reads Rule 57 to impose a consistency requirement, but not a per se "matters of detail" requirement. *See United States v. Robertson*, 45 F.3d 1423, 1436 (10th Cir. 1995) ("Rule 57 . . . permits the adoption of internal rules only when two circumstances exist. First, the district as a whole has not adopted a rule bearing on the same matter, and second, so long as the internal rule is not inconsistent with the federal rules or other district-wide rules.").

We need not determine whether the district court's standing order must also regulate only a "matter of detail" if paragraph 3 of the standing order is inconsistent with federal law. In discussing a district court's Rule 57 authority to promulgate local rules, we have concentrated on the "consistency" requirement in Rule 57(a) for rules promulgated by a majority of the district court, rather than rules adopted by individual judges under Rule 57(b), but we can apply the analysis of the meaning of "consistent" to both parts of the rule. *See, e.g., Schneider v. Feinberg*, 345 F.3d 135, 146 (2d Cir. 2003) ("The canons of statutory construction favor the consistent use of terms throughout a statute."); *United States v. Gabriel*, 125 F.3d 89, 101 (2d Cir. 1997) ("A term appearing in several places in a statutory text is generally read the same way each time it appears." (internal quotation marks and citation omitted)). *Compare* Fed. R. Crim. P. 57(a)(1) (describing local rules adopted by a majority of a district court) ("A local rule must be consistent with—but not duplicative of—federal statutes and rules adopted under 28 U.S.C. § 2072 and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States.") *with* Fed. R. Crim. P. 57(b) (describing standing orders adopted by individual

district court judges) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). Standing orders, of course, must also be consistent with the district court's local rules.

2.      *The Standing Order's Consistency with Federal Rule of Criminal Procedure 32*

We focus on the question whether the standing order is consistent with Fed. R. Crim. P. 32(f) and (i). Federal Rule of Criminal Procedure 32(f) provides: "An objecting party must provide a copy of its objections to the opposing party and to the probation officer." Fed. R. Crim. P. 32(f)(2). "After receiving objections, the probation officer *may* meet with the parties to discuss the objections" before submitting a revised PSR to the court seven days prior to the hearing. Fed. R. Crim. P. 32(f)(3) (emphasis added); *see also* U.S.S.G. § 6A1.2. Rule 32(i)(1)(C), meanwhile, states the sentencing court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence."

Rule 32 in general—and subdivisions (f) and (i) in particular—is intended to provide efficient and "focused, adversarial resolution of the legal and factual issues . . . to ensure that a defendant is not sentenced on the basis of materially untrue statements or misinformation." *United States v. Sisti*, 91 F.3d 305, 310 (2d Cir. 1996) (citations and internal quotation marks omitted). This purpose is clear from the history of the Rule's enactment. The Judicial Conference[4] first proposed the provisions pertaining to objections to the PSR in 1993 amid concerns that "sentencing hearings would become more complex due to the new fact finding

---

[4] The Judicial Conference acted under the authority granted by the Rules Enabling Act. 28 U.S.C. §§ 2071-74.

requirements imposed by guideline sentencing methodology." Report of the Advisory Committee on Criminal Rules to the Committee on Rules of Practice and Procedure 9 (Nov. 15, 1992), *available at* www.uscourts.gov/rules/Minutes/CR1092.pdf (last accessed August 3, 2007). Thus, in 1994 the Supreme Court approved, and Congress adopted, a version of Rule 32 that newly "focused on preparation of the [PSR] as a means of identifying and narrowing the issues to be decided at the sentencing hearing." *Id*. In the same revision, Rule 32 was drafted to reflect greater emphasis on a defendant's right to argue objections to the district court at the sentencing hearing.[5] *Id*. at 12. The Conference shaped both these provisions to "maximize judicial economy by providing for more orderly sentencing hearings while also providing fair opportunity for both parties to review, object to, and comment upon, the probation officer's report in advance of the sentencing hearing." *Id*. at 11; *see also* Federal Criminal Code and Rules 147 (Thomson West 2007). The case law confirms this understanding of Rule 32's purpose. *See Sisti*, 91 F.3d at 310 ("A defendant must have an opportunity to assure the accurate presentation of reliable sentencing information to the district court." (citations and internal quotation marks omitted)); *United States v. Reiss*, 186 F.3d 149, 157 (2d Cir. 1999) (similar); *United States v. Perez-Ruiz*, 421 F.3d 11, 13 (1st Cir. 2005) (stating that "the sentencing procedures laid out by Rule 32 are designed to narrow the issues and provide due notice"); *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1132 (10th Cir. 2003) (stating that Rule 32 "provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines

---

[5] In 2002, the Judicial Conference undertook a stylistic reorganization of Rule 32. Former subdivision (b)(6) became current subdivision (f) on objections to the PSR, while former subdivision (c)(1) became the current subdivision (i) on the opportunity to comment at the sentencing hearing.

sentence . . . by . . . permitting the parties to object . . . [and allowing] the probation officer . . . [to] meet with the parties to discuss objections, investigate further, and revise the PSR as appropriate") (internal quotations omitted); *United States v. Pabon-Cruz*, 321 F. Supp. 2d 570, 573 (S.D.N.Y. 2003) (stating that "the process of disclosure, comment, and judicial ruling provided by Rules 32(e)-(i) is more than adequate to address any inaccuracy in the PSR").

In this case, the district court denied Cole the procedural protections to which he was entitled under Fed. R. Crim. P. 32(f) and (i).  We infer from the comments of the district court that the purpose of the court's rule was to spur pre-hearing administrative resolution of disputes concerning sentencing factors.  In this sense, paragraph three duplicates some of the objectives of Rule 32.  Long before the sentencing hearing, the district court, the Government and the probation officer each had notice of Cole's objections to the sophisticated means enhancement by dint of Cole's plea agreement and his written submissions.  In light of the likelihood that all attempts at administrative resolution would not succeed, it is difficult for us to understand the purpose of imposing and enforcing paragraph three in this context.

The standing order states that a presentence conference is *mandatory* whenever there is an objection to the PSR's Guidelines calculation, and that the objecting parties have an *obligation* to seek out this conference.  *See* Paragraph 3.  Thus, the order specifically provides for the considerable penalty imposed here: the court denied counsel the opportunity to oppose an enhancement that resulted in a Guidelines difference of one year's incarceration for Cole.  *See* Paragraph 6 ("A party's failure to file timely a Statement [with respect to sentencing factors stating the objections discussed in the presentence conference] in accordance with the procedures set forth herein may result in that party's objections and/or motions being denied for failure to

12

comply with these Guidelines, without consideration of the merits of the objections and/or motions by the Court."). The standing order dictated this harsh result, even though Rule 32(f) provides only two guidelines to parties submitting such objections: they must (1) state in writing any objections to the PSR within 14 days of receiving the report, and (2) "provide a copy of . . . objections to the opposing party and to the probation officer." And the rule provides that "[a]fter receiving objections, the probation officer *may* meet with the parties to discuss the objections. The probation officer *may* then investigate further and revise the presentence report as appropriate." Fed. R. Crim. P. 32(f) (emphasis added). Paragraph three, however, imposes on parties objecting to the PSR the "obligation to seek administrative resolution of such disputes by conferring with opposing counsel and the Probation Office prior to filing the pleading referenced in Paragraph 4." Failure to comply with this additional requirement, according to the standing order, permits the district court to violate its obligations under Rule 32, which requires the court to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). In addition, one purpose of the Federal Rules generally is to promote uniformity, *see, e.g.*, Advisory Committee note 2 on Rule 57(b) ("[T]he rules are intended to constitute a comprehensive procedural code for criminal cases."), which purpose is thwarted by standing orders that impose additional requirements on parties only in certain forums. The standing order is thus inconsistent with the Federal Rules of Criminal Procedure.

Accordingly, on remand the district court must permit Cole to argue his objection to this enhancement and to argue any other objections as may be appropriate. If thereafter the district court applies the sophisticated means enhancement—an issue on which we express no

13

opinion—it should "explain . . . in enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand" the basis for that increased Guidelines calculation. *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007); *see also* 18 U.S.C. § 3553(c)(1); *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006); *United States v. Pereira*, 465 F.3d 515, 524-25 & n.9 (2d Cir. 2006); *United States v. Lewis*, 424 F.3d 239, 243-45 (2d Cir. 2005).

In addition, we are uncertain about the district court's reasons for its upward departure. On remand, the district court will have the opportunity to clarify its position as to whether it imposed the departure because it concluded that Cole secreted stolen funds or because it concluded that Cole deserved the departure because he was not candid or for some other reason.

**C.      Reassignment to a Different District Judge**

Cole argues we must reassign this case to a different district judge. Reassignment of a case on remand should occur only when the facts might reasonably cause an objective observer to question the judge's impartiality. *United States v. Londono*, 100 F.3d 236, 242 (2d Cir. 1996); *accord United States v. Quattrone*, 441 F.3d 153, 192 (2d Cir. 2006). While we note, with concern, the conduct complained of, we decline to reassign this case to a different district judge.

**III. Conclusion**

For the reasons stated, we VACATE the judgment of the district court and REMAND for resentencing. The district court shall schedule the resentencing within 60 days of the date of this decision. The mandate shall issue forthwith.

We include a copy of relevant portions of "The Procedure to Assist Practitioners Before the United States District Court Judges Richard J. Arcara and William M. Skretny In Proceedings Under the Sentencing Reform Act of 1984," *available at* http://www.nywd.uscourts .gov/document/SA_SEN.pdf (last accessed August 3, 2007).


**PROCEDURE TO ASSIST PRACTITIONERS BEFORE
UNITED STATES DISTRICT COURT JUDGES
RICHARD J. ARCARA AND WILLIAM M. SKRETNY
IN PROCEEDINGS UNDER THE SENTENCING REFORM ACT OF
1984
IN THE WESTERN DISTRICT OF NEW YORK
EFFECTIVE AUGUST 1, 1996**

. . .

2. Presentence Report. The initial PSR, including guideline computations, shall be completed and disseminated to the defendant, defense counsel and the Assistant United States Attorney assigned to the case at least forty-five (45) days prior to the scheduled sentencing proceedings, unless the minimum period is waived by the defendant. The Probation Office's recommendation on the sentence shall not be disclosed to the parties unless otherwise ordered by the Court.


3. Presentence Conference. If a party disputes any legal conclusions, sentencing factors or findings of facts material to sentencing included in the PSR, or seeks the inclusion in the PSR of any additional legal conclusions, sentencing factors or facts material to sentencing, it is that party's obligation to seek administrative resolution of such

disputes by conferring with opposing counsel and the Probation Office prior to filing the pleading referenced in paragraph 4. This presentence conference is mandatory except when the PSR is undisputed. No party may file a written objection to the PSR, as provided in paragraph 4, unless he or she has conferred with opposing counsel and the Probation Office in a good faith effort to resolve the disputed matter.

4. "Statement of Parties With Respect to Sentencing Factors". No later than twenty-four (24) days prior to the scheduled sentencing proceedings, counsel for the defendant and the Government shall file a pleading entitled, "Statement of Parties With Respect to Sentencing Factors," (the "Statement"), in accordance with Section 6A1 .2 of the Sentencing Guidelines and/or any subsequent rules and policies published by the United States Sentencing Commission. The Statement should either adopt the findings of the PSR or state with particularity any objections thereto.

5. Objections to "Statements with Respect to Sentencing Factors". An objecting party shall certify in the Statement that it has conferred with opposing counsel and the Probation Office in a good faith effort to resolve the objection. An objecting party shall file along with the Statement any material relevant to resolution of its objections and a memorandum of law, citing legal authority, in support of its objections. The Statement also should include any and all motions related to sentencing, including motions for upward or downward departures, along with a memorandum of law, citing legal authority, in support of the motion and any material relevant thereto.