In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4040

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

RAMON M. REYES-SANCHEZ,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-CR-45—**J.P. Stadtmueller**, *Judge.*

---

On Motion to Recall the Mandate

---

DECIDED DECEMBER 6, 2007

---

Before EASTERBROOK, *Chief Judge*, and CUDAHY and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Ramon Reyes-Sanchez, an alien who reentered the United States without permission after his removal, pleaded guilty to violating 8 U.S.C. §1326. He was sentenced to 33 months' imprisonment, substantially below the Guideline range of 57 to 61 months, because the district judge thought that aliens throughout the nation should receive steep discounts for pleading guilty to immigration offenses, whether or not the Attorney General has established a "fast track"

program in a given district. While the prosecutor's appeal was pending, we held in *United States v. Galicia-Cardenas*, 443 F.3d 553 (7th Cir. 2006), and *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006), that the judge was mistaken. On August 15, 2006, we vacated Reyes-Sanchez's sentence and remanded for resentencing consistent with *Galicia-Cardenas* and *Martinez-Martinez*.

Our mandate issued on September 6, 2006. The prosecutor did not ask the district judge to resentence Reyes-Sanchez, and the judge did not take any step on his own to implement the mandate. Apparently the prosecutor's office neglected to tell the Bureau of Prisons and the Department of Homeland Security about this court's decision, because on December 8, 2006, Reyes-Sanchez was released from prison when his 33-month sentence (less good-time credits) expired. In February 2007 he was removed to the Dominican Republic, of which he is a citizen. Some time in May 2007, more than eight months after our mandate had issued—a period during which the prosecutor and district judge neglected to implement our mandate—the United States Attorney's Office finally realized that Reyes-Sanchez was no longer in prison, or for that matter in the United States. It would have been simple for the prosecutor to determine when his sentence expired and to ensure that Reyes-Sanchez was resentenced before his release, but no one bothered to do that.

After allowing a further six months to pass, the United States Attorney's Office has asked us to proceed as if it had never appealed in the first place. It wants us to recall the mandate (issued more than 14 months ago) and reinstate the 33-month sentence that we have already held is erroneous. The reason for this proposed step is that the case otherwise will loiter on the district court's docket until Reyes-Sanchez again illegally reenters the United States, is caught, and is compelled to resume serving time in this case.

It is not clear to us why leaving this case open on the district court's docket is a bad thing. The prosecutor and district judge have themselves to blame for any untidiness. The district judge should have implemented our mandate without the need for prodding by the prosecutor—though the prosecutor could and should have reminded the judge about the need to act before Reyes-Sanchez was released. Meanwhile the United States Attorney should have notified the Bureau of Prisons and the immigration officials about the impending resentencing. Both the United States Attorney's Office and the Bureau of Prisons are components of the Department of Justice, not hostile sovereigns that keep secrets from each other. (The motion's assertion that "[t]he United States did not learn of the defendant's release and deportation until May of 2007" is hard to fathom: the Bureau of Prisons and the Department of Homeland Security are part of "the United States".)

Although a court of appeals has the authority to recall its mandate, the power should be used only in extraordinary circumstances when inaction would lead to an injustice. *Calderon v. Thompson*, 523 U.S. 538, 549–53 (1998). The Court held in *Calderon* that the negligence of two appellate judges in handling a capital appeal was not a sufficient justification for the recall of an appellate mandate. If judicial negligence does not justify recalling a mandate, how could the prosecutor's negligence do so? For that is the only reason the United States gives—that the prosecutor's office was napping when action was required. And it is likewise difficult to see how the bookkeeping issues that occupy the prosecutor's thoughts amount to an injustice. Many a case remains unresolved for years. Take, for example, the situation when a defendant is a fugitive. That's functionally Reyes-Sanchez's situation. Instead of alerting the prosecutor and the district court to a mistaken failure to impose a new

sentence, Reyes-Sanchez got on a plane and left the United States. The prospect of a lawful, though higher, sentence should he return is his due.

The United States may seek his extradition from the Dominican Republic, or it may offer to permit his entry under the immigration laws (the technical phrase is "parole into the United States") so that he could be resentenced. If Reyes-Sanchez declines that opportunity, then his absence will be a voluntary act and he could be resentenced *in absentia* under Fed. R. Crim. P. 43(c)(1)(B). See *United States v. Achbani*, No. 06-4190 (7th Cir. Nov. 8, 2007).

According to the prosecutor, *United States v. Londono*, 100 F.3d 236 (2d Cir. 1996), supports the conclusion that an appellate mandate should be recalled if the defendant is removed from the United States before being resentenced. *Londono* was decided before the Supreme Court stated in *Calderon* that recalling an appellate mandate requires compelling circumstances. What is more, *Londono* does not say that a mandate may be recalled to avoid inconvenient bookkeeping. The defendant in *Londono* had been removed from the United States before the court of appeals rendered its decision, and the court stated that a recall of mandate was appropriate to consider "the issue of potential mootness, a jurisdictional question that should have been timely presented by disclosure" of the alien's absence from the United States. 100 F.3d at 237. There was no jurisdictional problem when our decision was made and none when the mandate issued.

If the United States Attorney thinks that a case lingering on the district court's docket is an intolerable blot on a federal record-keeping system, he is free to dismiss the indictment or recommend that the President commute Reyes-Sanchez's sentence to time served. As things are,

however, the Judicial Branch should stand ready to impose a lawful sentence as soon as the defendant is available for sentencing, or is deemed voluntarily absent for the purpose of Rule 43(c)(1)(B).

The motion to recall the mandate is denied.

A true Copy:

  Teste:

      _____
      *Clerk of the United States Court of*
      *Appeals for the Seventh Circuit*