In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2216

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OLASEGUN O. OJOMO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 CR 109—**John Daniel Tinder**, *Judge.*

ARGUED FEBRUARY 19, 2003—DECIDED JUNE 12, 2003

Before FLAUM, *Chief Judge,* COFFEY and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* On September 19, 2001, Defendant-Appellant Olasegun Ojomo ("Ojomo") was indicted for having made fraudulent use of the U.S. mails over a 19-month period (from January 2000 through August 2001) in a scheme to secure student loans with false information. On April 23, 2002, Ojomo was convicted before a jury of violating 18 U.S.C. § 1341 (mail fraud). He now appeals his conviction, arguing that the district court erred by: (1) admitting allegedly unrelated character evidence in violation of Rule 404(b) of the Federal Rules of Evidence; (2) considering two uncharged frauds as "related conduct" for sentencing purposes; and (3) increasing

Ojomo's sentence pursuant to a finding of fact not proved to a jury beyond a reasonable doubt in violation of his right to a jury under the Seventh Amendment. We affirm.

## I. FACTUAL BACKGROUND

In the fall of 2000, Postal Inspector Robert Sheehan ("Sheehan") received a phone call from Servus Financial Corporation ("Servus"), a Virginia-based company specializing in the processing of student loan applications for financial institutions. Servus informed Sheehan that it had received several loan applications that it believed were fraudulent. After an investigation of the suspicious claims, Inspector Sheehan suspected Ojomo of using the identity of at least two unsuspecting individuals (*i.e.*, Kenneth Faith of Sickerville, New Jersey and Joseph Layton of Franklinville, New Jersey) and applying for student loans in their names without their knowledge or consent.

In August 2001, while Sheehan was conducting his investigation, Servus received another suspicious loan application. Bearing the name "Brian Feyler," the application listed an address that was actually a vacant residence in Terre Haute, Indiana. Sheehan arranged for a "controlled delivery"[1] of a check to the address in late August, 2001. Authorities arrested Ojomo immediately after he picked up the envelope, and a short time later obtained a search warrant for Ojomo's apartment.

---

[1] Details of this "controlled delivery" were brought out at trial. On August 29, 2001, postal inspectors had Ojomo's apartment in Indianapolis, Indiana under surveillance. The inspectors also were watching the Terre Haute residence to which the check was being delivered. In addition, the envelope in which the check had been inserted had a motion sensor that would set off an alarm if it was moved from the mailbox.

Upon execution of the search warrant, the following items were found in Ojomo's apartment: (1) a California driver's license in the name of "Daniel Hornickel" with Ojomo's picture on it; (2) a Nigerian passport in the name of "Michael Smith" with Ojomo's picture on it; (3) a Nigerian driver's license in the name of "Michael Smith" with Ojomo's picture on it; (4) another Nigerian passport in the name of "Muhammad Ali"; (5) an Illinois driver's license and a credit card in the name of "Raheem Anifowoshe"; (6) various documents using the identities of Brian Feyler, Daniel Hornickel, and Jeffrey Young; and (7) several pages of names and social security numbers.

Thereafter, on September 19, 2001, Ojomo was indicted by a grand jury for mail fraud pursuant to 18 U.S.C. § 1341. The indictment alleged that Ojomo perpetrated a "scheme to defraud" by "obtain(ing) names, social security numbers, address, and other means of identification (identifiers) of other persons without those persons' knowledge or approval" and using the identifiers in "submitting applications for loans to financial institutions." At trial, the government attempted to prove that Ojomo's "scheme to defraud" involved at least four named victims—Joseph Layton, Kenneth Faith, Brian Feyler, and Jeffrey Young.

As part of its case in chief, the government introduced the evidence collected during the search of Ojomo's apartment, including the "identifiers" (*i.e.,* the names, social security numbers, addresses, and other means of identification of certain persons other than himself) bearing the names Muhammad Ali, Michael Smith, Raheem Anifowashe, and Daniel Hornickel. Ojomo challenged this evidence on the grounds that it was unrelated to the charged conduct and should be excluded under Rule 404(b) of the Federal Rules of Evidence. The district court admitted the evidence under Rule 403, ruling that "the allegations in the indictment are broad" and that the evidence

of the other allegedly fraudulent identifiers was "very relevant, very probative, and not unduly prejudicial."

The jury returned a verdict of guilty on April 23, 2001. At sentencing, the government asked the district court to enhance Ojomo's sentence under the United States Sentencing Guidelines because of "related conduct" consisting of additional frauds that Ojomo had allegedly perpetrated, including two (*i.e.,* involving the names of "Mollo" and "Ferenci") that had not been referred to prior to the sentencing hearing. The government provided evidence that identifiers bearing the names Mollo and Ferenci were found in Ojomo's apartment, that Mollo and Ferenci were both New Jersey residents who lived within a short distance of Ojomo's other New Jersey victims, and that each false loan application bearing their names listed addresses in the same Terre Haute neighborhood as the other addresses given in applications that had been proved attributable to Ojomo.

The court agreed, and enhanced Ojomo's sentence accordingly. In reaching his conclusion, the trial judge noted:

> The Mollo and Ferenci frauds bear such a remarkable similarity, in fact virtual identity [sic] to the other frauds for which he says he now concedes through his proffer that he was involved in, that they point almost in as an identifying way as a fingerprint, or signature, or unique characteristic, common scheme and plan, what have you that would be clear identifier for this defendant.

The judge concluded: "This is the way [Ojomo] does his fraudulent business. The overlap with respect to use of addresses, and so on, technique, it is so strikingly similar that it could be no one else." The court sentenced Ojomo to 37 months imprisonment to be followed by five years of supervised release and deportation.

## II. ANALYSIS

### A. Rule 404(b) Evidence

Ojomo argues that several of the "identifiers" discovered at his apartment should not have been admitted into evidence, claiming that such evidence violated Rules 403 and 404(b) of the Federal Rules of Evidence. Specifically, Ojomo argues that those identifiers not bearing the names of the four specific frauds the government sought to prove at trial were unfairly prejudicial. Additionally, he argues that because the district court applied the "wrong rule" when evaluating the evidence under Rule 403 rather than Rule 404(b), he is entitled to have the introduction of this evidence reviewed *de novo* rather than under an abuse of discretion standard.

First, we must point out that the district court properly reviewed and analyzed the question dealing with the introduction of the "identifier" evidence under Rule 403 because of the nature of the crime with which Ojomo was charged and the nature of Ojomo's illegal activities. Ojomo was charged with violating 18 U.S.C. § 1341, which makes it a criminal offense to make use of the United States' mails in a "scheme to defraud." Thus, the government is required to establish, *inter alia,* that a defendant so charged "participated in a scheme to defraud." *United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir. 2002).

As we have stated before, evidence "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b)." *United States v. Ramirez,* 45 F.3d 1096, 1102 (7th Cir. 1995) (citing cases). Thus, as long as those acts meet the requirements of Rule 403, they may be admitted in evidence at trial. *United States v. Hargrove,* 929 F.2d 316, 320 (7th Cir. 1991). Acts satisfy this "inextricably inter-twined" doctrine if they "complete the story of the crime on

trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime." *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002).

The district court expressly stated that the proffered evidence of the other fraudulent identifiers was "very relevant evidence of the fact that it shows more than a cottage industry . . . of acquiring and utilizing identifiers belonging to people other than Mr. Ojomo," and that it was "very relevant, very probative, and is not unduly prejudicial." We agree that the trial court properly exercised its discretion in ruling on this point. *See Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001) ("[T]he trial court's balancing of probative value and unfair prejudice is highly discretionary and its decision on admissibility will be afforded great deference.") Thus, we hold that the evidence of the other identifiers introduced at trial was properly classified as relevant evidence under Rule 403 of the "scheme to defraud" as broadly defined in the indictment, and was not "other acts" evidence under Rule 404(b).

## B. "Related Conduct"

Ojomo's next argument is that the court improperly considered evidence of certain other frauds as "related conduct" for sentencing purposes. This Court reviews for clear error the district court's finding that uncharged conduct is "relevant conduct" for sentencing purposes. *United States v. Smith*, 218 F.3d 777, 782 (7th Cir. 2000.)

To hold the defendant accountable for uncharged, unproven "related conduct" at sentencing, the trial court must determine by a preponderance of the evidence that the related conduct was attributable to the defendant, and

was part of the same course of conduct, common scheme, or plan as the charged offense. *See United States v. Duarte,* 950 F.2d 1255, 1263 (7th Cir. 1991). Sentencing judges must "explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, the finding that the unconvicted activities bore the necessary relation to the convicted offense." *Smith*, 218 F.3d at 783 (citation omitted).

In the case at bar, Ojomo challenges the district court's enhancement of his sentence based on the reception of evidence of two other frauds. The government's evidence relating to the two other frauds included names and social security numbers found in Ojomo's apartment which were used to apply for student loans. The addresses listed for the loan applicant were located in the same neighborhood in the same area of the state of New Jersey as the other addresses used by Ojomo, and the fraud victims lived near Ojomo's other New Jersey victims. The district court found that each of these frauds bore a "remarkable similarity, in fact, virtual identity [sic] to the other frauds." The court stated that these additional frauds "point almost in an identifying way as a fingerprint, or signature, or unique characteristic, common scheme and plan . . . for this defendant." The judge concluded: "The overlap with respect to use of addresses and . . . technique . . . is so strikingly similar that it could be no one else."

These statements of the judge during the course of trial and recorded in the record, although they were not in a "written statement of reasons," satisfy the *Robinson* requirements. The trial judge "explicitly state[d] and support[ed]" its finding that "the unconvicted activities bore the necessary relation to the convicted offense" of mail fraud. *Smith*, 218 F.3d at 783. The *Smith* court found that what it described as "bare bones" findings sufficed to support the district court's determination. "The

fact that more could have been said . . . does not compel us to vacate [the] sentence." *Smith*, 218 F.3d at 783. Here, the district court's findings were more than "bare bones." It is clear from the court's statements regarding the "strikingly similar" technique that the trial judge had weighed the evidence relating to the additional frauds. Thus, we hold that the district court's finding was not "clearly erroneous," and is affirmed.

## C. Maximum Sentence

Ojomo next invites this Court to depart from precedent and require "related conduct" to enlarge the burden of proof required under case law and that it be proved beyond a reasonable doubt rather than by a preponderance of the evidence. We decline to grant this request. As Ojomo's counsel admitted at oral argument, such a ruling would require this Court to overrule its repeated holdings to the contrary. *See, e.g.*, *Talbott v. Indiana*, 226 F.3d 866, 869-70 (7th Cir. 2000) (holding that "most circumstances increasing a statutory maximum sentence must be treated as elements of the offense"). We refuse to grant the appellant's invitation to revisit this issue, which has recently been settled by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that facts other than prior convictions which increase a criminal penalty beyond the statutory maximum penalty must be proved to a jury beyond a reasonable doubt). The statutory maximum penalty attached to mail fraud is thirty years if, as here, a financial institution was affected. 18 U.S.C. § 1341. Ojomo was sentenced to a term of imprisonment of three years and one month. As the sentence imposed was less than the statutory maximum sentence, *Apprendi* is not implicated.

### III.  CONCLUSION

We hold that the district judge did not commit error when (1) admitting evidence of other fraudulent identifiers when the defendant was charged with a scheme to defraud; (2) considering evidence of two other (uncharged) frauds as "related conduct" for sentencing purposes; and (3) increasing Ojomo's sentence within the statutory limits. We AFFIRM.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
