UNITED STATES of America,
Plaintiff–Appellee,

v.

Julius BURTS, Defendant–Appellant.

No. 03–4260.

United States Court of Appeals,
Seventh Circuit.

Argued July 7, 2004.

Decided Aug. 23, 2003.

James P. Hanlon, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

William E. Marsh, Indianapolis, IN, for Defendant–Appellant.

Before CUDAHY, COFFEY, and ROVNER, Circuit Judges.

## ORDER

After a jury found Julius Burts guilty of possessing a firearm after having been convicted of a felony, 18 U.S.C. § 922(g)(1), the district court sentenced him to 264 months' imprisonment, 5 years' supervised release, a $1000 fine, and a $100 special assessment. At trial Burts objected to the admission of testimony that he had given a false name to a police officer during the traffic stop that led to his arrest and also argued that the evidence was insufficient to convict him.

Burts reiterates these arguments on appeal. We affirm.

In February 2003 Burts was a passenger in a vehicle stopped by the Indianapolis police for running a stop sign. An officer approached and asked the occupants to identify themselves, and Burts reported that his name was "Beronta Smith." Burts was seated in the rear passenger-side seat; the driver of the vehicle and the front passenger truthfully identified themselves as Greg Williams and Ricky Kinartail, respectively. The officer returned to his car and checked for any outstanding warrants and police records as well as driving histories for the known occupants of the vehicle. The search revealed that Williams's driving privileges had been revoked, but turned up nothing about Kinartail or "Smith."

The officer decided to arrest Williams for driving without a license. He returned to the vehicle and removed Williams, asking if he had any weapons on him or in the vehicle. Williams stated that he did not, and the officer handcuffed him and sat him on the rear bumper of the vehicle. At this point a second officer arrived and recognized that Burts was not Beronta Smith (apparently a real person known to the second officer), and at this time Burts revealed his true name. The two officers then asked Burts and Kinartail whether they were armed or were there any weapons in the vehicle, and both responded in the negative. When the officers searched the vehicle, however, they found a loaded .45 caliber handgun on the passenger-side on the floor of the backseat. The gun was positioned so that it was partially underneath the front passenger seat, although the grip was exposed in an area most accessible to Burts so that it was in plain view from outside the vehicle.

After the gun was found, one of the officers overheard Burts tell Kinartail to "tell him that it's yours." The officer then asked Kinartail if the weapon was indeed his, and he responded that "if it keeps Julius from getting locked up, it is." The officer also asked Burts if the gun was his, and he responded that it was not. At some point the officers ran a records check on Burts and discovered three outstanding arrest warrants. They arrested Burts on those warrants. The police also recovered one latent fingerprint from the magazine inside the gun, but it was never identified.

Prior to trial Burts moved in limine to exclude evidence that he gave the police a false name. He argued that his lie was an uncharged bad act unrelated to the traffic stop, and that telling the jury about the false name would prejudice him. The district court, however, reasoned that excluding testimony about the false name would leave "inexplicable absences from the information about the stop." The court also noted that the evidence was relevant in determining whether Burts knowingly possessed the gun; a jury might reasonably infer that Burts knew he had a gun since he gave the officers the name of a person who "very well might be a person for whom possession of a firearm might not be a criminal matter."

At trial both sides presented testimony addressing the ownership and possession of the weapon. The owner of the vehicle testified that she had allowed Williams to borrow it, but had never seen a gun inside. Both Williams and Kinartail testified that they did not own the gun and had never seen it before the night of the traffic stop. A fourth man who had ridden in the vehicle earlier on the day of the stop testified that the gun was not his and that he had not seen it while riding in the back seat on the driver's side. The police officer who secured the weapon testified that, based on the position of the gun and the alignment of various "electronic gadgets" underneath

the front passenger seat, he did not believe that the front passenger could have passed the weapon underneath the seat. A defense witness, however, testified that he successfully slid an air pistol of the same dimensions as the gun recovered from the car from the front passenger seat to the area where Burts had been sitting.

At the conclusion of the government's case, Burts moved for a judgment of acquittal. The district court denied the motion. After presenting evidence in his own case, Burts renewed his motion, and it was once again denied.

■ On appeal Burts argues that the district court erred when it allowed the government to introduce testimony that he gave a false name during the traffic stop. He argues that this testimony was neither chronologically nor conceptually necessary to the story of the gun offense, which he submits had primarily to do with "his physical proximity to the firearm in the vehicle." He further states that the probative value of this evidence was "minimal" and far outweighed by the prejudice caused because "[p]eople, including jurors, do not like for other people to lie to police officers."

Federal Rule of Evidence 404(b) generally prohibits district courts from admitting evidence concerning a defendant's other uncharged bad acts. *United States v. Thomas*, 321 F.3d 627, 633–34 (7th Cir. 2003). However, evidence "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed. R.Evid. 404(b)." *United States v. Hite*, 364 F.3d 874, 881 (7th Cir.2004) (quoting *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir.1995)). Acts are considered "inextricably intertwined" with the charged offense—and therefore admissible—if they are necessary to "complete the story of the crime" or if they prove any element of the charged crime. *United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir.2003). Of course, like any evidence, evidence of acts inextricably intertwined with the charged offense may be excluded if the danger of unfair prejudice substantially outweighs its probative value. *United States v. Bogan*, 267 F.3d 614, 622–23 (7th Cir.2001). We review a district court's evidentiary rulings under the highly deferential abuse of discretion standard. *United States v. Ward*, 211 F.3d 356, 363 (7th Cir.2000).

In this case evidence concerning Burts's use of a false name is clearly inextricably intertwined with the gun charge. Burts gave the false name contemporaneously with his alleged possession of the firearm, and we have previously held that evidence of conduct that arises from the same transaction as the charged offense is not "other acts" evidence. *United States v. Angle*, 234 F.3d 326, 343 (7th Cir.2000). More importantly, however, the fact that Burts misidentified himself helps prove an element of the crime, namely Burts's possession. *See Ojomo*, 332 F.3d at 489. The jury reasonably could have inferred that Burts lied because he possessed a weapon that his felon status made it illegal for him to have. *See United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir.2003). Because Burts's use of a false name both concerned the chronological unfolding of his possession of a weapon and tends to prove one of its elements, the district court did not abuse its discretion in determining that the false name evidence did not fall under Rule 404(b)'s prohibition of "other acts" evidence.

Nor does it appear that the danger of prejudice from this evidence outweighed its probative value under Fed.R.Evid. 403. As mentioned above, the testimony that Burts provided a false name was probative

of his possession of the weapon. Moreover, although there was some possibility of prejudice because juries are understandably suspicious of liars, *see United States v. Lane,* 323 F.3d 568, 581 (7th Cir.2003), the prosecution did not unduly emphasize this evidence such that it might "induce the jury to decide the case on an improper basis, commonly an emotional one," *United States v. Gibson,* 170 F.3d 673, 683 (7th Cir.1999). Burts's use of a false name was relevant and not unfairly prejudicial, and accordingly the district court's admission of this evidence was not an abuse of discretion.

■ Burts also argues that the evidence was insufficient to support the jury's conclusion that he was guilty of possessing a firearm after having been convicted of a felony. He suggests that the gun easily could have belonged to any of the other passengers in the car.

On appeals challenging the sufficiency of the evidence, we review the denial of a motion for judgment of acquittal de novo and uphold the jury's verdict if any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To establish a violation of 18 U.S.C. § 922(g)(1), the government must show that a convicted felon knowingly possessed a firearm that had traveled in or affected interstate commerce. *United States v. Gill,* 58 F.3d 334, 336 (7th Cir.1995). Possession, the only element Burts challenges, can be actual or constructive; constructive possession occurs when a person knowingly has the power and intention to exercise dominion and control over an object. *United States v. Rawlings,* 341 F.3d 657, 659 (7th Cir. 2003). A defendant's mere presence in the area where a weapon is found does not establish constructive possession; the gov-

ernment must establish a nexus between the weapon and the defendant to distinguish him from a "mere bystander." *United States v. Quilling,* 261 F.3d 707, 712 (7th Cir.2001).

In this case, the government met its burden of proving beyond a reasonable doubt that Burts had the ability and intent to control the gun. The gun was found in an area directly at Burts's feet and its handle was fully exposed in plain view, making it most difficult to conclude that he was not aware it was there. *Gill,* 58 F.3d at 337. The weapon was also in arm's reach at the time Burts was detained by the police, which we have previously, held to be sufficient to demonstrate control. *See United States v. Starks,* 309 F.3d 1017, 1026–27 (7th Cir.2002). Burts's use of a false name further suggests that he was trying to distance himself from the gun because of his status as a felon. *Jernigan,* 341 F.3d at 1279. And most incriminating is the fact that, referencing the gun, Burts told Kinartail to "tell him that it's yours." The jury could infer from this that Burts possessed the weapon and wished to evade responsibility, especially in light of Kinartail's response when the officer asked him if the gun was his: "if it keeps Julius from getting locked up, it is." Finally, the government presented testimony about the layout of the SUV that, if credited by the jury, showed that none of the other people in the vehicle had ready access to the weapon at Burts's feet. Although the government was not required to prove that Burts was the only person with the ability to control the weapon, *United States v. Gorman,* 312 F.3d 1159, 1164 (10th Cir. 2002), evidence that he had greater access than the other people in the car supports the jury's conclusion that he was the person who possessed it, *United States v. Jackson,* 301 F.3d 59, 64 (2d Cir.2002). Based on these facts, a reasonable jury

could find that Burts knew of the weapon and intended to exercise control over it.

Accordingly, the judgment of the district court is AFFIRMED.