# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-2808

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM B. HITE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-CR-20077—**Michael P. McCuskey**, *Judge.*

———————

ARGUED FEBRUARY 19, 2003—DECIDED APRIL 14, 2004

———————

Before FLAUM, *Chief Judge*, and COFFEY, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* On October 3, 2001, William B. Hite was charged by indictment with possession of an unregistered short-barreled rifle, a violation of 26 U.S.C. § 5861(d), and possession of a firearm with an obliterated serial number, a violation of 18 U.S.C. § 922(k). Following a two-day jury trial the defendant, Hite, was convicted on both counts and sentenced to fifty-seven months in prison, three years of supervised release and ordered to pay a special assessment of $200. The district court, Judge Michael P. McCuskey presiding, entered judgment on July 2, 2002. On July 5, 2002, the defendant filed a timely notice

of appeal. On appeal, Hite raises two evidentiary issues: (1) whether the defendant's ex-girlfriend should have been allowed to testify at trial that Hite placed a bullet in the chamber of a revolver, spun the chamber, and pulled the trigger a couple of times; and (2) whether the district court erred in granting the prosecution's motion in limine to exclude the hearsay testimony of two witnesses claiming that Timothy Bickers, the defendant's cousin, told them he actually owned the guns. Affirmed.

## I. BACKGROUND

In February 2001, the defendant was on probation in Coles County, Illinois, for two prior convictions for domestic battery and battery causing bodily harm. On the evening of February 13, 2001, Hite violated his state court probation after failing to attend a mandatory group probation meeting with his probation officer, Philip Baumunk. Officer Baumunk, accompanied by Officer Mike Nichols, paid an unannounced visit to the defendant's residence at approximately 2:00 p.m. the following day, in order to ascertain why the defendant had not appeared the previous evening. The defendant was living with his grandmother, Lena Peters, in Matoon, Illinois, located in Coles County at that time.

Upon arriving at the residence, with Hite's consent, Officer Baumunk accompanied Hite to the bedroom that Hite was occupying at the time. Upon entering the bedroom, Officer Baumunk instantly noticed, lying in plain view, a folding pocket-knife and a crossbow pistol. Recognizing the possession of these items as a violation of the defendant's probation, Officer Baumunk inquired as to whether there was any other contraband in the room. Hite responded by showing Officers Baumunk and Nichols a tray of marijuana seeds and stems, and a knife covered with a black burned

substance on it lying next to the components of a "water bong"—used for smoking marijuana. Hite, at this point, claimed there was no other contraband in the room.

Following the discovery of the weapons and drug paraphernalia, Officer Baumunk contacted his supervisor, Vicki Starwalt, and requested a full compliance search of Hite's bedroom.[1] When Starwalt arrived, she and Officer Baumunk proceeded to perform a complete search of the defendant's room and discovered several other knives, a bow and arrow set, several items of drug paraphernalia and two firearms. The firearms were located inside a backpack, amongst a pile of clothing, at the foot of the defendant's bed. The first firearm was described as a "cut-down Remington .22 caliber rifle," and the other as "a Liberty .22 caliber revolver." When confronted with these firearms, the defendant denied ownership claiming that they were the property of his cousin, Timothy Bickers.[2]

---

[1] The purpose of a compliance search is to determine whether the person on probation has violated the terms of that probation. Officer Baumunk testified that when a probation violation is suspected, it is office policy for the probation officer to contact a supervisor, here Vicki Starwalt, to request a full search as a probation compliance check.

[2] On May 25, 2001, Timothy Bickers submitted a Motion for Return of Items with the Circuit Court for the Fifth Judicial Circuit of Illinois in Coles County, Illinois. The Motion states in part: "Comes now Tim Bickers, and respectfully requests that the items seized from William Bradley Hite, namely a compound bow, row of arrows, cross bow, and knives, be returned to Tim Bickers, as they are his and not William Hite's." It is important to note that no mention of the firearms is made in this Motion.

The government filed a motion in limine to prevent the defense from introducing this evidence at trial claiming, among other things, the document was not relevant and that it lacked foun-

(continued...)

Before leaving the residence Officer Baumunk issued a property receipt to Hite for the items seized, including the two firearms. When presented with the receipt, Hite stated to Officer Baumunk that he should "take care" of the guns because "they were family heirlooms and one dated to the World War II era."

In October 2001, a grand jury returned a two-count indictment against Hite, charging him with possession of an unregistered rifle having a barrel of less than 16 inches, in violation of 26 U.S.C. § 5861(d), and possession of a firearm that had the manufacturer's serial number obliterated, in violation of 18 U.S.C. § 922(k). On November 5, 2001, Hite pled not guilty to both counts. Prior to the commencement of trial on March 18, 2002, both parties filed various motions in limine, which are the subject of this appeal.

*A. Defense Motion in Limine as to the Testimony of Patricia Stuart*

The defense's motion in limine asked the district court to prevent the testimony of Hite's ex-fiancée, Patricia Stuart, because the probative value of her testimony would be outweighed by the prejudice it would cause the defendant. According to the government's response to Hite's motion in limine, Stuart was prepared to testify that she witnessed

---

(...continued)

dation, *i.e.*, there was no evidence that the signature on the Motion for Return of Items was actually that of Hite's cousin, Tim Bickers. The district court originally granted the motion in limine, however, upon reconsideration allowed the defense to introduce the document as evidence of ownership regarding the listed items as long as the defense laid the proper foundation and authenticated the signature. At trial, after a proper foundation was established, Lena Peters, Bickers' grandmother, testified that she had personally witnessed Bickers sign the document.

the defendant in possession of the firearms in question during the course of their sixteen-month engagement, from January of 1998 until April of 1999, and that Hite told her that the guns were kept at the grandmother's residence. In addition, Stuart would testify that in the early part of 1998, Hite played "Russian roulette" with her. Specifically, she stated that Hite pointed a revolver at her head, inserted one round, showed the inserted round to her, spun the chamber, and pulled the trigger a "few times," until she convinced him to stop.

The defense objected to the inclusion of this evidence under Rules 402, 403 and 404 of the Federal Rules of Evidence. The defense argued Stuart's testimony was irrelevant, and therefore inadmissable under Rule 402, because the alleged incident occurred two years prior to Hite's being charged with the crimes at issue. Also, the defense claimed Stuart's testimony was inadmissable evidence of "other crimes" under Rule 404. Finally, as pointed out earlier, the defense argued that, if Stuart's testimony was otherwise admissible, it should be barred under Rule 403, because any probative value would be outweighed by the prejudice it would cause.

The district court granted Hite's motion in part, but issued a limiting instruction. The court found that under Federal Rules of Evidence 402 and 404(b), Stuart's testimony was "directly relevant to whether the defendant knowingly possessed both firearms." In deciding to allow Stuart's testimony, the district court found that the evidence was highly probative in that it establishes the defendant's knowledge and possession of the firearms in question. The court reasoned that, because knowing possession of the firearms was an element under both 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(k), evidence of Hite's ability and intention to exercise control over the firearm,

was "inextricably intertwined" with the charged crimes. *See United States v. Roberts*, 933 F.2d 517, 520 (7th Cir. 1991).

However, because the court feared that the prejudice caused by the proffered testimony may substantially out-weigh any probative value the stating and description of a "Russian roulette" situation might provoke, the court issued a limiting instruction under Rule 403 of the Federal Rules of Evidence. The district court instructed counsel that Stuart could testify that the defendant possessed a revolver, placed a bullet in it, spun the barrel and pulled the trigger. However, Stuart was told that, at no time, was she to characterize the event as "Russian roulette," nor was she to testify that the gun was pointed at her face or head.[3] In addition, Stuart could testify that she was concerned for her safety, but could not testify as to anything said during the alleged Russian roulette incident.

Unsatisfied with this ruling, the defense objected to Stuart's potential testimony that the defendant pulled the trigger of the revolver inside a building.[4] However, the court reiterated its position that, under Rule 403, Stuart would be allowed to testify as to the defendant's knowledge of weapons. The court found the probative value of testi-mony concerning where and how the trigger on the firearm was pulled outweighed any unfair prejudice it might induce.

---

[3] The district court made it clear that the testimony was being split between "the Russian roulette and abusive conduct to her personally." Therefore, Stuart was not allowed to testify that the gun was ever pointed at her during the incident.

[4] The defense asked the court to "reconsider that part of the court's ruling that allowed—that allows her to testify that he pulled the trigger . . . inside the building, its [sic] much more prejudicial than if its [sic] outside." The court responded by not reconsidering the decision finding that any negative inference the jury may form from testimony about the trigger being pulled indoors went to Hite's "knowledge or possession of the weapons."

At trial, Stuart was called as a prosecution witness and followed Judge McCluskey's instructions. In part, she testified as follows:

Q: And what were the circumstances by which you saw Government Exhibit 5 (the Liberty .22 caliber revolver)?

A: He had it in his hand.

Q: And what did you observe about Government Exhibit 5 when he had it in his hand?

A: He's [sic], showed me that there was a bullet in the chamber, spun it—

Q: Let me stop you there. How did he show you there was a bullet in the chamber?

A: He opened up the chamber and showed it to me.

Q: And then what?

A: He spun the chamber and pulled the trigger a few times.

Q: Now, did—was a shot ever fired?

A: No.

Q: Did this cause you any concern?

A: Yes.

Q: Did he stop pulling the trigger?

A: Yes.

Q: And why did he stop pulling the trigger?

A: I had convinced him to stop.

In order to further mitigate the possibility that Stuart's testimony would unfairly prejudice Hite, a limiting in-

struction was also given to the jury at the conclusion of Stuart's testimony.[5]

### B. The Government's Motion in Limine Concerning the Testimony of William Hite and Eddie Kemper

Prior to trial, the government moved the court to exclude, *inter alia*, the testimony of William D. Hite, the defendant's father, and Eddie Kemper, Jr., a family friend.[6] The two men were prepared to testify that, two weeks prior to Hite's arrest, Timothy Bickers[7] made an out-of-court statement claiming ownership of the firearms in question. The defense conceded that the statements were hearsay, but argued that the testimony should be allowed under Rule 804(b)(3) of the Federal Rules of Evidence as a statement against the declarant's penal interest.

---

[5] That instruction read as follows: "You have heard evidence that prior to the acts charged in the indictment the defendant possessed the firearms he is now charged with possessing. You may consider this evidence only on the question of intent, knowledge, absence of ignorance or mistake, and motive. You should consider this evidence only for these limited circumstances."

[6] Both men are convicted felons. In 1999, William D. Hite was convicted of felony possession of a controlled substance. Likewise, Eddie Kemper, Jr. was convicted of felony burglary in 1992 and of driving with a revoked license in 2001.

[7] As mentioned before, Bickers is the defendant's cousin. In addition, there was testimony suggesting that Bickers and Hite "hung out together." There was also testimony that Bickers spent a good deal of time at (Hite's and Bickers' grandmother) Lena Peters' house, where Hite was arrested. However, William D. Hite's testimony at trial suggests he only witnessed Bickers at Peters' home once in two years, although he made regular visits there to visit her.

On March 18, 2002, the trial judge held an evidentiary hearing on the government's motion. At that hearing, Agent Dennis Fritzsche from the Bureau of Alcohol, Tobacco & Firearms testified he had interviewed Bickers' mother after Hite's arrest. Agent Fritzsche also testified that Bickers' mother stated that her son told her the guns in question did not belong to him.

In addition, Investigator Donald Espinoza, Federal Public Defender's Office, testified that he had been unsuccessful in his attempts to locate Bickers. Investigator Espinoza testified that, at the time of Hite's arrest, there was also a warrant out for Bickers' arrest on check fraud charges. As a result, between December 2000 and February 2001, Bickers was making appearances in the Coles County court system while he was dealing with those charges. However, despite his interaction with law enforcement officials during that time, the defense failed to make reasonable efforts to secure Bickers' testimony. Investigator Espinoza's testimony establishes that the defense did not attempt to serve Bickers with compulsory process, nor did they take the simple step of contacting county officials to effect service.

Investigator Espinoza produced documents showing that in March of 2001, Bickers pled guilty to check fraud charges, paid a fine, and was released and also that when he began looking for Bickers in connection with the present litigation in December of 2001, he was told that Bickers was planning to leave Coles County. The testimony establishes that local authorities, such as the county sheriff or Bickers' probation officer, were never contacted and that thereafter Bickers' whereabouts were unknown.[8]

---

[8] Investigator Espinoza learned from family members that, in the ensuing months, Bickers was doing construction work in various locations across the country. However, Investigator Espinoza had

(continued...)

At the conclusion of the hearing, the trial court found that under Rule 804(b)(3): (1) the defense did not make a reasonable effort to determine whether Bickers was unavailable to testify at trial;[9] (2) Bickers' statement claiming ownership of the firearms in question was not one which "so far tended" to subject him to criminal or civil liability such that a reasonable person in his position would not have made the statement if it were not true; and (3) there were no corroborating circumstances which indicated the trustworthiness of the statement. Therefore, the district court barred the testimony of William D. Hite and Eddie Kemper, Jr. relating to the alleged statements make by Bickers, claiming ownership of the firearms at issue, as inadmissable hearsay evidence.

## II.  ANALYSIS

In March 2002, a jury convicted Hite on two counts of illegal possession firearms. On appeal, Hite raises two issues: (1) whether Patricia Stuart should have been allowed to testify at trial that Hite placed a bullet in the chamber of a revolver, spun the chamber, and pulled the trigger a couple of times; and (2) whether the district court erred in granting the prosecution's motion in limine to exclude the testimony of William D. Hite and Eddie Kemper, Jr. as to

---

(...continued)

been unsuccessful in locating Bickers in any of the locals he was told Bickers may be working in.

[9]  As the court recognized in its ruling, the government had conceded unavailability by stating: "[a]lthough the efforts of the defendants in obtaining the whereabouts of Tim Bickers seem less than enthusiastic . . . we're not going to object to a finding by the Court that Tim Bickers is unavailable. We certainly have been unable to find him."

Timothy Bickers' statements regarding the ownership of the illegal guns on the grounds that it was inadmissable hearsay evidence.

## A. Patricia Stuart's Testimony

Hite argues that the district court erred in allowing Stuart to testify that she witnessed the defendant spin the chamber of the revolver and pull the trigger a couple of times. Hite claims that this testimony was inadmissible as evidence of other crimes under Rule 404(b) of the Federal Rules of Evidence and, in the alternative, was unfairly prejudicial under Rule 403. The district court held that although evidence of "other crimes" is generally inadmissible character evidence under Rule 404(b), however, if the evidence referred to is "inextricably intertwined" with the facts of the case, like the Stuart's proffered testimony, it only needs to be found admissible under Rule 403.

We review the evidentiary decisions of the trial court for an abuse of discretion.[10] *See United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003), *accord United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002). As this court has explained on numerous occasions, "evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not

---

[10] Hite argues incorrectly that the determination of whether or not evidence falls within the scope of Federal Rule of Evidence 404(b) should be reviewed *de novo*. To support this proposition he cites a Ninth Circuit decision, *United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir. 1999). However, this court has consistently held that evidentiary decisions, including those concerning Rule 404(b) are reviewed only for abuse of discretion. *See, e.g., United States v. Williams*, 216 F.3d 611, 614 (7th Cir. 2000) ("We review rulings determining the admissibility of evidence under Rule 404(b) for an abuse of discretion.").

evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b)." *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995) (citing various other cases). Such evidence is "inextricably intertwined" with the events surrounding the charged crimes and, therefore, is admissible unless unfairly prejudicial under Rule 403. *See United States v. Miller*, 327 F.3d 598, 603 (7th Cir. 2003). Acts satisfy the inextricably intertwined doctrine if they are necessary to "complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime." *United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir. 2003) (quoting *United States v. Senffer*, 280 F.3d 755, 764 (7th Cir. 2002)); *accord United States v. Bogan*, 267 F.3d 614, 621-22 (7th Cir. 2001).

Because the evidence presented to the trial court indicated that Stuart's testimony, as to Hite's possession of the illegal firearms, would prove his knowledge and intention to exercise control over the prohibited firearms, the judge found that this was "not evidence of other crimes, but [was] inextricably intertwined with the offenses." We find that the district court's exercise of discretion in ruling on this point was proper. In order to convict Hite on either charge in the indictment, the government had the burden of establishing that the defendant knowingly possessed the firearms in question. *See* 26 U.S.C. § 5861(d); 18 U.S.C. § 922(k); *see also United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir. 1995) ("Possession may be either actual or constructive. Constructive possession is the ability to control the gun."). Therefore, because Stuart's restricted testimony as to the event tends to establish the possession element of the charged crimes, it is unquestionably the type of evidence contemplated by the inextricably intertwined doctrine, thus it is allowable. *See Ojomo*, 332 F.3d at 489.

We also agree with the court's ruling to limit Stuart's testimony under Rule 403. The district court found that testimony regarding "that part of this incident character-ized as Russian roulette or the pointing of the gun and the pulling of the trigger at her face or head" would be preju-dicial and thus Stuart was specifically prohibited from tes-tifying as to that part of the incident.

The defense argues the court did not go far enough in limiting Stuart's testimony. Specifically, the defense argues that Stuart should not have been allowed to testify that Hite pulled the trigger of revolver a couple of times while inside a building. We disagree with the defense and hold that the limiting instruction and evidentiary determination made by the district court was squarely within that court's discretion. *See United States v. Morris*, 957 F.2d 1391, 1399 (7th Cir. 1992) ("[I]t is well established that a trial judge's assessment of relative probative value and unfair prejudice is generally accorded great deference because of his first-hand exposure to the evidence and his familiarity with the course of the proceeding.") (quoting *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir. 1990)).

## B.  Bickers' Alleged Out-of-Court Statements

Hite's other argument is that the trial court erred in ex-cluding the testimony of William D. Hite and Eddie Kemper, Jr. While the defense conceded that Bickers' alleged statement falls within the definition of hearsay, *see* Fed. R. Evid. 801(c), the defense claims the testimony should be allowed under Rule 804(b)(3) as a statement against the declarant's penal interest.

We review the district court's decision to exclude hearsay evidence under Rule 804(b)(3) for an abuse of discretion. *See United States v. Westmoreland*, 240 F.3d 618, 626 (7th Cir. 2001). An inculpatory statement is only admissible under Rule 804(b)(3) if the proponent of the statement can

establish that: "(1) the declarant is unavailable to testify at trial; (2) the statement was against the declarant's penal interest; and (3) corroborating circumstances bolster the statement's trustworthiness." *United States v. Shukri*, 207 F.3d 412, 416 (7th Cir. 2000). The trial judge ruled that the defense had failed to meet its burden regarding Bickers' alleged out-of-court statements. We agree.

The district court was correct in finding that the defense's efforts in attempting to locate Bickers fell far short of exhibiting a reasonable effort. Under Rule 804, "the party seeking to introduce hearsay statements[] bears the burden of showing that the declarant was unavailable." *United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000). Under Rule 804(a)(5), for a witness to be "unavailable" the proponent of the hearsay statement must be unable to produce the declarant as a witness at trial "by process or other reasonable means." Fed. R. Evid. 804(a)(5). To satisfy the reasonable means mandate of Rule 804(a)(5), a good-faith effort must be made to obtain the declarant's presence at trial. *See United States v. Kehm*, 799 F.2d 354, 360 (7th Cir. 1986) (citing *Barber v. Page*, 390 U.S. 719, 724-25 (1968)).

We hold that the district court did not abuse its discretion in finding that Hite had failed to pursue reasonable means to determine Bickers' unavailability.[11] The record shows that the "search" for Bickers did not begin until four months before the trial began, in December of 2001. The record also reveals that, before that time, Bickers was in and out of the court system in Coles County on numerous occasions

---

[11] At trial the government conceded that Bickers was unavailable. However, the defendant cites no legal authority—nor have we discovered any—which supports the proposition that the prosecution's concession of Bickers' unavailability releases Hite from the requirement to exercise reasonable efforts to procure Bickers' testimony.

between February and July of 2001. However, an attempt was never made to contact Coles County law enforcement, ask for their assistance in the issuance of compulsory process, or otherwise secure Bickers' testimony at trial. Indeed, the only attempt made to locate Bickers was made by the defense's investigator, Donald Espinoza, who testified that "I've talked to family members . . . [but] that's about as far as I've gone." We hold that it was not an abuse of discretion for the district court to conclude that Hite had not made a reasonable effort to secure Bickers' testimony because "[b]oth the [C]onstitution and Rule 804 strongly favor live testimony." *Kehm*, 799 F.2d at 360-61.

Next, the district court found that the defendant had failed to establish the trustworthiness of the evidence corroborating Bickers' alleged hearsay statements as to ownership of the illegal firearms. A trial court judge has discretion to exclude out-of-court exculpatory statements proffered by the defense unless "the corroborating evidence does not clearly indicate the trustworthiness of the statements."[12] *United States v. Amerson*, 185 F.3d 676, 684 (7th

---

[12] However, this proposition may no longer be true for inculpatory out-of-court statements proffered by the prosecution in criminal cases. *See Crawford v. Washington*, 72 U.S.L.W. 4229 (March 8, 2004). In *Crawford v. Washington*, the Supreme Court recently overruled the longstanding framework for the admissability of out-of-court statements under *Ohio v. Roberts*, 448 U.S. 56, 100 (1980), which allowed hearsay evidence, absent the opportunity by defense to cross-examine, if the declarant was truly unavailable and the evidence fell within a "firmly rooted hearsay exception" or was shown to have "particularized guarantees of trustworthiness." 448 U.S. at 66-74. In *Crawford*, the Court held that, under the Confrontation Clause, out-of-court statements are to be excluded unless the witnesses is found to be unavailable and the defense was provided a prior opportunity to cross-examine that person, regardless of whether the trial court deems the statements to be

(continued...)

Cir. 1999) (quoting *United States v. Hall*, 165 F.3d 1095, 1112 (7th Cir. 1999)). We will not disturb a trial court's finding that a statement is untrustworthy unless we are convinced a clear error has been committed. *See Amerson*, 185 F.3d at 684.

As the district court noted, the only corroborating evidence establishing the trustworthiness of Bickers' statement is testimony by William D. Hite, the defendants's father, and Eddie Kemper, Jr., the defendant's cousin, indicating Bickers merely showed them the firearms in question. However, ATF Agent Fritzsche refuted this evidence when he testified that Bickers' mother told him that Bickers denied owning the firearms. In addition, the Motion for Return of Items signed by Bickers did not list the illegal firearms Hite was charged with possessing, thereby refuting any alleged prior claim of ownership, leaving one to question whether he was the lawful owner of the firearms. Therefore, because the available evidence is contrary to Bickers' alleged hearsay statement, we conclude the district court did not err when it determined that Bickers' alleged statement lacked trustworthiness.

Because we hold that the district court properly ruled as to the declarant's unavailability and the trustworthiness of his statement, we need not address whether the court correctly found that the statement was contrary to Bickers' penal interest.

---

(...continued)

reliable or not. *See Crawford*, 72 U.S.L.W. at 4235-38. Because we hold Hite was not truly unavailable, *i.e.*, no good-faith effort was made to secure his presence at trial, and because the hearsay statements concerned were offered by the *defense* and not the prosecution, the Sixth Amendment is not implicated and the Supreme Court's decision in *Crawford* would not change our reasoning. *See* U.S. CONST. amend. VI ("In all criminal prosecutions . . . the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .").

However, even if we were to assume, *arguendo*, that the district court's exclusion of Bickers' hearsay statement was in error, the result would be harmless. The inappropriate exclusion of Bickers' statements would not be grounds for disturbing the jury's verdict. A jury's verdict should not be disturbed unless failing to do so would garner results that are "inconsistent with substantial justice." Fed. R. Civ. P. 61. Under this standard, a trial court's evidentiary errors will be held to be harmless unless there is significant chance that they affected the outcome of the trial. *See Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000).

The great weight of evidence in this case clearly established the guilt of the defendant beyond a reasonable doubt. Patricia Stuart testified that she witnessed Hite in possession of the firearms in question while they were dating. In addition, the firearms Hite is accused of possessing were found among his belongings in the room he was occupying at his grandmother's house. Indeed, the defendant linked the guns to himself when he requested that Officer Baumunk "take care" of the guns because they were family heirlooms. Also, the hearsay testimony suggesting Bickers' ownership of the firearms itself was placed in serious doubt by Bickers' Motion for Return of Items making no reference to them. Accordingly, this Court holds that Hite's challenge to the district court's granting of the government's motion in limine lacks merit and, therefore, must fail.

### III. CONCLUSION

For the reasons discussed herein, the district court's judgment is

                                                    AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*