NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2014
Decided March 27, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 12-3832 & 13-2201

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | |
| CHRISTOPHER H. CANNON, *Defendant-Appellant.* | Nos. 2:11cr16-001 & 2:12cr14-001 |
| | Joseph S. Van Bokkelen, *Judge.* |

## O R D E R

Christopher Cannon, a self-professed "Public Minister of the Moorish Science Temple of America," used fake $50 bills to buy three televisions from Sears. After a jury trial in December 2011, during which Cannon was removed from the courtroom for disruptive behavior, he was found guilty of passing counterfeit money. *See* 18 U.S.C. § 472. The district judge sentenced him to 30 months' imprisonment, but before that, in January 2012, Cannon was charged in a second indictment with two counts of mail fraud arising from false insurance claims he submitted after his house burned down. *See id.* § 1341. That case also went to trial, and Cannon again was removed from the

courtroom for disruptive behavior. The jury found him guilty on one count, and he was sentenced to 30 months' imprisonment, to be served consecutively to the 30 months imposed for the counterfeiting conviction.

Cannon filed a notice of appeal from each judgment, and we have consolidated the two appeals for decision. Cannon is representing himself in his appeal from the counterfeiting conviction and has filed a brief on the merits.* Appointed counsel represents him in his appeal from the conviction for mail fraud, but the lawyer has moved to withdraw on the ground that all potential appellate claims are frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967). Cannon opposes counsel's *Anders* submission. *See* CIR. R. 51(b).

We start with Cannon's appeal from his counterfeiting conviction. He devotes most of his brief to his professed status as a "Public Minister" representing the "Moorish National Government." Cannon says that his true name is "Christopher H-Cannon:Bey" and declares that he is "a living, breathing full-liability man." His status as a "public minister," says Cannon, means that the district court lacked jurisdiction over him, violated his "rights and immunities" under Illinois law and the federal Constitution, and "trespass[ed] on the Religious Trust and Estate of the Moorish Science Temple Of America." We will not indulge arguments like these; they are frivolous, and the district court acted properly by summarily rejecting them. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).

Cannon does challenge the appointment of counsel to represent him at trial, but that challenge has no merit. Cannon had the right to represent himself, but that right could not be exercised without knowingly and intelligently waiving the right to counsel. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *Smith v. Grams*, 565 F.3d 1037, 1044 (7th Cir. 2009). Cannon did his best to avoid making a choice. He said repeatedly that he did not want any help from his appointed lawyer, yet he also insisted that he was unwilling to represent himself. At a status hearing a few weeks before trial, the district judge had understood Cannon to be asking that his appointed lawyer be discharged and that he be allowed to represent himself. When the judge acceded but appointed the same lawyer as standby counsel, Cannon responded, "Well, I still must object because I'm not representing myself here today." That comment prompted the

---

* After examining the briefs and record in that appeal, no. 12-3832, we have concluded that oral argument is unnecessary. Thus, that appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

judge to reconsider, and when Cannon next appeared before him a few weeks later, the judge once more asked if he wanted to represent himself. Cannon replied, "I do not wish to contract with your corporation at all," and the judge, seeking clarification, asked, "That means you don't want to represent yourself, correct?" Cannon answered: "I do not wish to contract with your corporation. I give you a better answer. I do not consent waiver of benefit." When the judge probed further, Cannon continued, "Well, what I prefer to do here, sir, is formally request and demand my diplomatic immunity under my treaty and enforce my treaty here today with the United States and ask—and formally request and demand that the United States honor and request my treaty." That was enough for the judge, who reappointed Cannon's lawyer. Cannon may have hoped that, by rejecting appointed counsel *and* refusing to represent himself, he could force the judge to dwell on frivolous theories about immunity and jurisdiction. But the judge rightly declined to take the bait, *see Benabe*, 654 F.3d at 767, and it was not error to find that Cannon never knowingly and intelligently waived his right to counsel.

Cannon's belligerent behavior also foils his claim that it was error to remove him from the courtroom during trial. Every defendant has a right to be present at trial, *see* FED. R. CRIM. P. 43(a); *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Benabe*, 654 F.3d at 768, but that right can be waived, explicitly or implicitly through misconduct, *see* FED. R. CRIM. P. 43(c)(1)(C); *Allen*, 397 U.S. at 342–43; *Benabe*, 654 F.3d at 768. Throughout the pretrial proceedings Cannon had voiced his frivolous legal theories in countless statements made in open court. He often refused to answer the district court's questions, treating those inquiries as invitations to lodge an objection or pose his own question to the court, and he had no qualms about interrupting the court or counsel during the proceedings. Because of this history, Cannon's own lawyer proposed immediately before jury selection that he be excluded from the courtroom during trial. Cannon responded with more of the same frivolous objections and statements. The district judge tried reasoning with him and asked multiple times if he would allow his lawyer to represent him without interruption. Cannon would not answer and continued his spiel, even after the judge twice warned that further interruptions would lead to exclusion from the courtroom. Cannon's disruptive behavior justified removing him, and that misconduct did not abate when, at each break in the trial, the judge had Cannon returned to the courtroom to see if he was willing to control himself.

Lastly, Cannon argues that the government engaged in vindictive prosecution. This contention is frivolous. The government cannot prosecute in retaliation for exercising protected statutory or constitutional rights, but challenging the prosecutor's motivation requires clear evidence of vindictiveness. *See United States v. Armstrong*, 517

U.S. 456, 464 (1996); *United States v. Jarrett*, 447 F.3d 520, 524–25 (7th Cir. 2006); *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006). Cannon accuses the prosecutor of making the case "a personal matter … all because Cannon:Bey [was] standing up for his constitutional secured rights, his god given rights and his rights under his treaty." But Cannon provided no evidence that his prosecution for counterfeiting was anything more than the predictable response to passing phony currency.

We turn now to the *Anders* motion filed by appointed counsel in Cannon's appeal from his conviction for mail fraud. Our review is limited to the potential issues identified in counsel's facially adequate brief and in Cannon's opposition. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

Three of the potential arguments discussed by the lawyer and Cannon warrant only brief mention. First, as already discussed, any appellate claim premised on Cannon's status as a "public minister" would be frivolous. Second, it would be frivolous to challenge the appointment of counsel, for Cannon again took the position of both rejecting appointed counsel *and* refusing to represent himself, despite the district court's patient efforts at discerning Cannon's wishes one way or the other. Third, it would be frivolous to challenge Cannon's removal from the courtroom during trial; he engaged in the same misbehavior that led to his removal from his counterfeiting trial, and he told the judge that he could not promise to refrain from interrupting the proceedings.

Counsel considers whether Cannon could argue that the government's evidence is insufficient to sustain the jury's verdict but properly concludes that this argument would be frivolous. We would view the evidence in the light most favorable to the government and uphold the conviction if any rational jury could have found the essential elements of mail fraud beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. McMillan*, No. 12-1348, 2014 WL 945212, at *4 (7th Cir. Mar. 12, 2014). To obtain a conviction for mail fraud, the government had to show that Cannon participated in a fraudulent scheme, intended to defraud, and used the Postal Service or an interstate carrier to further the scheme. *See* 18 U.S.C. § 1341; *United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir. 2002). The government presented evidence that, after his home burned, Cannon received in the mail a check from his insurance company to satisfy his claim for the cost of alternative housing. Cannon had substantiated that claim with a copy of a lease, but at trial the owner of the house testified that she had never met or leased property to Cannon, and her adult daughter admitted that she had helped Cannon draft the fake lease and forged her mother's name. Cannon's appointed lawyer at trial argued that the fraud was immaterial because

he would have been entitled to living expenses in any event, but appellate counsel rightly dismisses that defense as frivolous. In a prosecution for mail fraud, the government is not required to establish that the defendant's scheme was directed at obtaining money or property that he would not have been entitled to through legal means. *See United States v. Richman*, 944 F.2d 323, 330–31 (7th Cir. 1991); *United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998). There was plenty of evidence for the jury to find Cannon guilty.

Both counsel and Cannon consider arguing that the government engaged in vindictive prosecution, a challenge that would be reviewed for plain error because it was not raised in the district court. *See United States v. Algee*, 309 F.3d 1011, 1014 (7th Cir. 2002); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009). We agree with counsel that this challenge would be frivolous. Counsel first points out that Cannon was indicted for mail fraud a little more than a month after he was found guilty of counterfeiting, but there is nothing particularly suspicious about that timing. This is not a case in which the prosecutor brought additional charges involving the same conduct after the defendant successfully challenged a conviction, *see Blackledge v. Perry*, 417 U.S. 21, 28–29 (1974), or in which the defendant received a longer sentence after a second trial on the same charges, *see North Carolina v. Pearce*, 395 U.S. 711, 723–25 (1969). And neither counsel nor Cannon identifies any evidence to suggest that the prosecutor brought charges of mail fraud vindictively.

Second, counsel points out that the prosecutor recommended a 20-year sentence, even though the calculated guidelines range for the mail-fraud conviction was 18 to 24 months. Calling this disparity "troubling," counsel nevertheless concludes that resting a vindictiveness claim on that disparity would be frivolous because we would review only for plain error. We agree with counsel's ultimate conclusion; even an obvious error will not lead to reversal on plain-error review unless that error affected the appellant's substantial rights, *see Puckett*, 556 U.S. 129, 135 (2009), and Cannon's substantial rights were not affected because the district judge rejected the prosecutor's recommendation and, as we will see, imposed a substantively reasonable sentence.

What's more, we would not even find error because the recommended sentence could well have been justified. The prosecutor argued that the district judge should exercise his discretion under 18 U.S.C. § 3553(a) to impose the statutory maximum sentence. According to the prosecutor, a 20-year sentence is justified by evidence submitted at the sentencing hearing that Cannon had committed other uncharged crimes, including attempting to commit more insurance fraud after a fire in another

residence he owned, defrauding the food stamp program of $600,000, and unlawfully possessing six guns, including a semi-automatic rifle with an obliterated serial number. Cannon's criminal history includes a burglary conviction and a serious drug felony conviction, so the gun possession by itself could have led to a guidelines range as high as 168 to 210 months. *See* U.S.S.G. § 2K2.1(a). Given the evidence of uncharged conduct, and a criminal history category that the judge deemed "understated," the prosecutor's recommendation does not suggest vindictiveness.

Nor does the judge's discomfort with imposing the statutory maximum based on uncharged conduct make the recommendation vindictive. Judges are permitted to make findings about uncharged conduct so long as those determinations do not increase the statutory penalties. *See* 18 U.S.C. § 3553(a); *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Indeed, calculating the guidelines range often requires judicial findings about relevant conduct. *See* U.S.S.G. § 1B1.3. The prosecutor might have argued that the uncharged insurance fraud was relevant conduct, *see United States v. Frith*, 461 F.3d 914, 917–18 (7th Cir. 2006); *United States v. Ojomo*, 332 F.3d 485, 490 (7th Cir. 2003), and even Cannon's unlawful possession of firearms, had that conduct been proven to the judge's satisfaction, would have been a permissible basis for imposing a prison sentence above the guidelines range, *see* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Jordan*, 435 F.3d 693, 697 (7th Cir. 2006) (finding above-guidelines sentence for stalking and having sex with a minor justified, in part, because of defendant's gun possession). The judge decided that the uncharged crimes, if used to enhance Cannon's sentence, would amount to a "tail which wags the dog of the substantive offense." *See McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986). But that decision was an exercise of the judge's sentencing discretion, not a conclusion that the prosecutor's proposal was not grounded in fact and law.

Counsel next considers whether Cannon could argue that the district judge erred by sentencing him in absentia. As with trial, defendants have a right to be present at sentencing, *see* FED. R. CRIM. P. 43(a), but that right can be waived by voluntary absence, *see* FED. R. CRIM. P. 43(c)(1)(B); *United States v. Achbani*, 507 F.3d 598, 601–02 (7th Cir. 2007); *United States v. Reyes-Sanchez*, 509 F.3d 837, 839 (7th Cir. 2007). Cannon refused to come to court on the day that his sentencing originally was scheduled, so the judge postponed the proceeding for more than a month and directed that Cannon be served a notice informing him about the rescheduled date and his right to be present.

A counselor at the Metropolitan Correctional Center read the order to Cannon and gave him a copy. When Cannon still refused to attend the hearing, the judge found that Cannon had waived his right to be present under Rule 43. We agree with counsel that challenging that finding would be frivolous. *See Achbani*, 507 F.3d at 601.

Finally, counsel evaluates Cannon's sentence, considering first whether Cannon could argue that his sentence was imposed in violation of law or was substantively unreasonable. Counsel has identified no problems with the guidelines calculation of 18 to 24 months' imprisonment or any clearly erroneous facts relied on by the district judge. And before imposing a prison term that is six months longer than the calculated range, the judge considered the factors under § 3553(a)—including Cannon's "consistent history of disregard for the law" and "understated" criminal history category. *See* 18 U.S.C. § 3553(a)(1), (2). We agree that any challenge along these lines would be frivolous.

Second, counsel considers challenging the district court's order of restitution on the ground that the jury did not determine the amount of loss. A jury must find facts that increase the statutory punishment defendants face, *see Alleyne*, 133 S. Ct. at 2158; *Apprendi*, 530 U.S. at 490, and "punishment" includes a criminal fine, *see Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012). But we have held that restitution is a civil remedy and does not require a jury to find the amount of loss. *See, e.g., United States v. Wolfe*, 701 F.3d 1206, 1216–18 (7th Cir. 2012); *United States v. Bonner*, 522 F.3d 804, 807 (7th Cir. 2008). We thus agree with counsel that, in view of existing circuit precedent, a challenge to the restitution order would be frivolous. We acknowledge, however, that the circuits are divided over whether restitution is a civil or criminal penalty, *see Wolfe*, 701 F.3d at 1217 (noting circuit split), and Cannon may petition the Supreme Court for a writ of certiorari if he so desires. *See Austin v. United States*, 513 U.S. 5, 5–6 (1994).

The judgment in appeal no. 12-3832 is **AFFIRMED**. Counsel's motion to withdraw in appeal no. 13-2201 is **GRANTED**, and that appeal is **DISMISSED**.